# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

DAPHNE C.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

Case No. 2:17-cv-01593-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses defendant's decision and remands for an award of benefits.

## INTRODUCTION

On March 20, 2015, this Court reversed the Commissioner's decision in plaintiff's first Social Security appeal and remanded for further administrative proceedings. AR 1120-33. The facts relating to the first appeal are set forth in that decision and will not be repeated here.

On January 6, 2016, a second hearing was held at which plaintiff appeared and testified, and vocational expert, William Weiss, appeared by phone, but did not testify. AR 1030, 1056-1087. In a written decision dated August 22, 2017, the ALJ again determined that plaintiff was not disabled. AR 1033-1047.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 2005 through her date last insured of December 31, 2007 (the relevant period).[1] AR 1033. At step two, the ALJ found plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, chronic headaches, depression, and substance dependence. AR 1033. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 1033-1034. The ALJ then considered plaintiff's residual functional capacity (RFC) and found at step four that she could not perform her past relevant work, but that she could perform other jobs that exist in significant numbers in the national economy at step five, and therefore she was not disabled. AR 1034-1047.

It appears that the Appeals Council did not assume jurisdiction of the matter, making the ALJ's decision the Commissioner's final decision, which plaintiff appealed in a second complaint filed with this Court on October 26, 2017. Dkt. 1; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's August 22, 2017 decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence; (2) in evaluating plaintiff's testimony; (3) in evaluating the lay witness evidence; and (4) in evaluating step three. Dkt. 8. The Court agrees the ALJ erred, and orders reversal and remand for an award of benefits.

---

[1] To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see also Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). To be entitled to disability insurance benefits, therefore, plaintiff must establish she was disabled prior to or as of December 31, 2007. *Tidwell*, 161 F.3d at 601.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.      ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff challenges the ALJ's decision discounting the opinion of treating rheumatologist, Richard Neiman, M.D. Dkt. 8 at 11-13.

Three types of physicians may offer opinions in Social Security cases: "(1) those who

treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan,* 242 F.3d at 1149. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent,* 739 F.2d at 1394-95 (internal citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his

conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

In July 2006, Dr. Neiman diagnosed plaintiff with "[d]evastating fibromyalgia and CFS [chronic fatigue syndrome,]" and opined that she "[c]an barely do anything around the house[, and is] [c]learly unable to work[.]" AR 560. In 2011, Dr. Neiman opined that plaintiff is "unable to function because of problems with pain, fatigue and mentation[,]" and has been incapacitated since 2003. AR 252. He found that plaintiff had tenderness to palpation throughout her body, full range of motion that was painful at times, and difficulty with memory and concentration. AR 252. He also noted plaintiff gets frequent migraine headaches. AR 252.

The ALJ gave Dr. Neiman's opinions little weight for three reasons: (1) Dr. Neiman's opinions did not describe any specific vocational limitations and the issue of whether plaintiff could work was reserved for the Commissioner; (2) Dr. Neiman's opinions were inconsistent with the treatment notes; and (3) Dr. Neiman did not review the entire record and his opinions were inconsistent with the overall record.[2] AR 1043-44.

Dr. Neiman's opinions were contradicted by Dennis Koukol, M.D., and thus, the ALJ was required to articulate specific and legitimate reasons supported by substantial evidence in the record to discount his opinion. *Trevizo*, 871 F.3d at 675.

---

[2] Defendant argues that the ALJ provided four legally sufficient reasons for giving little weight to Dr. Neiman's opinion. Dkt. 9 at 13. However, the Court finds that the first two reasons should be considered together.

A.      Vocational Limitations and Issue Reserved for Commissioner

First, the ALJ found Dr. Neiman's opinions did not reflect specific vocational limitations, and therefore, did not constitute medical opinions. The ALJ characterized Dr. Neiman's opinions that plaintiff cannot work as legal conclusions, which are reserved to the Commissioner. AR 1043 (citing 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1)).

This was an incorrect characterization. Dr. Neiman's opinions were not merely an "administrative finding that [is] dispositive of a case, i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d)(1). Rather, Dr. Neiman's opinions discuss the severity of plaintiff's impairments and the impact on her daily activities. AR 252. Therefore, this is not a specific or legitimate reason to reject Dr. Neiman's opinions.

B.      Internal Inconsistencies and Subjective Reports

Next, the ALJ found that Dr. Neiman's opinions did not show objective findings consistent with the level of functional limitations. AR 1043. An ALJ may discount a treating physician's account when it is contradicted by the physician's own records. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). However, here, the ALJ failed to properly consider plaintiff's fibromyalgia-related symptoms in accordance with SSR 12-2p (issued in 2012), and did not follow the reasoning of the Ninth Circuit opinion *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) (published before the ALJ's decision was issued).

The ALJ pointed to several objective normal test results, finding no abnormality in musculoskeletal, neurological or mental function. AR 1043-44 (citing AR 262-272). She also noted plaintiff had good and bad days, but improved in 2008 after new medication. *See id.*

In *Revels* the Ninth Circuit provided the following background regarding fibromyalgia and how it should be evaluated in the context of a Social Security appeal:

Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

. . . .

Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia wax and wane, and that a person may have bad days and good days. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible.

*Revels,* 874 F.3d at 656-657 (internal quotations and citations omitted).

Here, in discounting Dr. Neiman's opinions, the ALJ cited to objective examination results that (according to the ALJ's assessment) would be consistent with debilitating fibromyalgia. For example, the ALJ emphasized examinations where plaintiff had tenderness to palpation but normal gait, mental status, strength, range of motion, and sensation. AR 1043-44 (citing AR 262-272). *See Revels*, 874 F.3d at 656-57 ("typical [fibromyalgia] symptoms include chronic pain throughout the body, multiple tender points, fatigue …. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal.") (internal citations omitted). This is exactly what the Ninth Circuit in *Revels* warned against. *See Revels*, 874 F.3d at 656–57. In addition, fibromyalgia is "diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms,'" and thus the ALJ erred by rejecting Dr. Neiman's opinions on grounds that Dr. Neiman relied on plaintiff's self-reports. *Revels*, 874 F.3d at 656–57 (internal citations omitted).

The record indicates plaintiff's fibromyalgia was not effectively controlled—plaintiff's symptoms waxed and waned, which is characteristic of fibromyalgia. *See, e.g.*, AR 51-54, 57, 1065-67 (plaintiff testified that she has good days on bad days, good days are limited to two to six days per month); AR 47, 310-545, 561-97, 603-806, 807-1014, 1024-26, 1074 (plaintiff has seen naturopaths, neurologists, rheumatologists, and pain management specialists, and has tried a number of treatments to alleviate her symptoms including physical therapy, hydrotherapy, biofeedback, acupuncture, chiropractic manipulations, stretch and relaxation classes, meditation, epidural and trigger point injections, narcotics, muscle relaxants, anti-depressants, and benzodiazepines); SSR 12-2p, 2012 WL 310869; *Revels*, 874 F.3d at 656–57 ("the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days'") (internal citations omitted); *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir. 2004) (stating that "there is no cure" for fibromyalgia).

There was not substantial evidence to support the ALJ's decision discounting Dr. Neiman's opinions, and the ALJ made a legal error under *Revels* by discounting Dr. Neiman's opinions on the ground that his opinions were inconsistent with his treatment notes. *See Revels*, 874 F.3d at 656–57.

C.    Overall Record

Third, the ALJ found that Dr. Neiman did not review the entire record, and his opinions were inconsistent with the overall record. AR 1044. Specifically, the ALJ stated, "unlike Dr[ ]. Neiman, I have reviewed the entire record. I find that there are other factors that are also inconsistent with the doctor[']s opinion[ ]. For instance, inconsistent with [his] opinion of disabling limitations since [ ] 2003, the claimant did not apply for disability until 2011.

Moreover . . . it appears that the claimant was able to work with her impairments in 2004 and 2005." AR 1044.

A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). In fibromyalgia cases, the Social Security Administration recommends looking at longitudinal records because the symptoms of fibromyalgia "wax and wane," and a person may have "bad days and good days." SSR 12-2p at *6. *See also Revels,* 874 F.3d at 663.

It is not clear what records Dr. Neiman reviewed at the time of his evaluations. *See* AR 252-295, 558-560, 1275-1279, 1302-1315, 1567-1576. Contrary to the ALJ's suggestion, a diagnosing physician is not required to review every past medical record, especially where, as here, that source was the treating rheumatologist for plaintiff's fibromyalgia. *See* SSR 12–2p, 2012 WL 3104869 at *5; *Revels,* 874 F.3d at 664 ("When a treating provider's opinion is not entitled to 'controlling weight' because of substantial contradictory evidence, that opinion is still 'entitled to deference' based on factors such as the length and nature of the treatment relationship.") (citing *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)).

The ALJ failed to weigh the six factors from the SSA regulations concerning the opinions of Dr. Neiman. AR 1043-44; 20 C.F.R. § 404.1527(c)(2)–(6) ("When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."); *see Trevizo*, 871 F.3d at 675. The broad principle of consistency, *see* 20 C.F.R. § 404.1527(c)(4),

does not relieve an ALJ of the responsibility to consider other factors—including the treating relationship or the specialization of the physician—whenever an examining source's opinion contradicts a treating provider's opinion. In fibromyalgia cases, the Ninth Circuit has repeatedly given a treating rheumatologist's opinion deference because of the "specialized knowledge" and extensive treatment relationship. *Revels,* 874 F.3d at 664; *see also Benecke*, 379 F.3d at 594 n.4.

Furthermore, an independent review of the record does not reveal any other conditions that could account for the majority of plaintiff's symptoms, such as fatigue and generalized pain that waxes and wanes. *See, e.g.*, AR 232-1026; *see also* SSR 12–2p, 2012 WL 3104869 ("the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days"); *Revels*, 874 F.3d at 663.

The ALJ's finding that plaintiff was able to work from March 2004 to January 2005, AR 1042, 1044, does not constitute substantial evidence. The Court previously noted that the record shows plaintiff was not working as a full-time property manager—her husband was working and she was not able to help. AR 1128-29. Plaintiff does not claim disability before the alleged onset date of February 1, 2005, at which time she was no longer employed. Thus, whether Dr. Neiman's opinion is contradicted by the fact that plaintiff was employed before the alleged onset date is not material.

The ALJ's conclusion that plaintiff's application date of July 26, 2011, somehow shows her symptoms were not as severe as she alleged is not supported by record. There are numerous treatment notes documenting plaintiff's chronic pain and fatigue between 2005 and 2011. *See, e.g.*, AR 252, 558-60, 564-565, 566-573, 575-597.

After considering the record and the ALJ's findings, the Court concludes the record does not support the ALJ's finding Dr. Neiman's opinions were inconsistent with the overall record.

1   Therefore, the ALJ has failed to provide a specific and legitimate reason, supported by

2   substantial evidence, for giving little weight to Dr. Neiman's opinions. Accordingly, the ALJ

3   erred.

4          D.      Harmless Error

5          "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

6   F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

7   claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

8   *Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674

9   F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific

10  application of judgment" by the reviewing court, based on an examination of the record made

11  "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at

12  1118-19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

13         In the RFC assessment, the ALJ found that plaintiff could perform light work. AR 1034.

14  If the ALJ had properly credited Dr. Neiman's opinions, the RFC would have included more

15  severe limitations to plaintiff's ability to work. The ALJ's error with respect to Dr. Neiman's

16  opinions is not harmless and requires reversal. *Stout*, 454 F.3d at 1055 (an error is harmless if it

17  is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability

18  determination).

19  II.    Plaintiff's Subjective Symptom Testimony

20         Plaintiff alleged limitations from pain, fatigue, migraines, and poor concentration. AR 51.

21  Specifically, plaintiff testified she has pain all over her body, needs to lie down or rest 95 percent

22  of the time, has trouble walking, cannot sit or stand for long periods of time, is always tired and

23  fatigued, and has "brain fog." AR 51, 55-56, 58, 1073, 1081. Plaintiff testified she has good days

24

25

anywhere from two to six times per month. AR 57. Plaintiff testified that medication "takes the edge off, but it doesn't take the pain away," and she continues to have severe symptoms. AR 51.

The ALJ gave five reasons for her adverse finding: (1) plaintiff's testimony was inconsistent and she exhibited drug-seeking behavior; (2) plaintiff worked despite her allegedly disabling symptoms; (3) plaintiff's delay in applying for benefits undermined her claim of disability on or before her insured status expired; (4) the evidence did not reflect more restrictions than the RFC; and (5) plaintiff's allegations were inconsistent with the medical evidence including that plaintiff's symptoms improved and/or were controlled. AR 1036-43.

To the extent these reasons were previously decided and rejected by the District Court (AR 1128-1131), the Commissioner is bound by this Court's previous decision. Any arguments to the contrary by the Commissioner—defending the portions of the ALJ's decision that would be contrary to the Court's rulings on those already-decided issues—are precluded by the doctrine of law of the case. *Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016). To the extent the ALJ supplemented the previous decision or provided different reasons, the Court again finds the ALJ has failed to provide clear and convincing reasons, supported by substantial evidence for rejecting plaintiff's subjective symptom testimony.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a

whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

A.    Internal Inconsistencies, Drug-Seeking Behavior, and Work History

The ALJ determined that plaintiff's statements to her providers contradicted her own testimony and her testimony had internal contradictions, which demonstrated drug-seeking behavior. AR 1039-41. Plaintiff testified and reported to Dr. Nancy Sajben, M.D., that she has had migraines since she was 12 years old, they occur 15 days per month, and last from 2 to 72 hours each time. AR 49 (hearing testimony), 566 (Dr. Sajben treatment notes). The ALJ found that plaintiff's testimony and her reports to Dr. Sajben were inconsistent with the records showing plaintiff was able to engage in substantial gainful activity from 1988 to 2000 and March 2004 to January 2005. AR 1041-42 (citing AR 145-46). When the ALJ questioned plaintiff about this inconsistency, plaintiff stated she had been able to work because her employers were understanding. AR 1041. The ALJ did not find that this explanation was plausible in light of the "profound symptoms she describes." AR 1041.

The Commissioner is bound by this Court's previous decision concerning these issues. *Stacy*, 825 F.3d at 567. Importantly, as noted above with respect to Dr. Neiman's opinions, plaintiff alleges she became disabled on February 1, 2005, at which time she was no longer employed. Thus, whether plaintiff's testimony or her statements to Dr. Sajben were contradicted by the fact that plaintiff was employed before the alleged onset date is not necessarily material, and does not constitute substantial evidence. As such, the ALJ's finding is not supported by

ORDER - 13

substantial evidence in the record, and the Court concludes that the ALJ erred in finding that this evidence undermines plaintiff's subjective symptom testimony.

B.    Delay in Applying for Benefits

Next, the ALJ rejected plaintiff's testimony because she did not apply for benefits until 2011, six years after her alleged onset date of February 1, 2005. AR 1042-43. The ALJ reasoned that this delay meant plaintiff's symptoms were not as severe as alleged. *Id.* However, the ALJ has not cited to any evidence in the record, and the Court is not aware of any, that corroborates that this delay calls plaintiff's credibility into question. In addition, this inference is not reasonable in light of the extensive treatment records documenting pain and fatigue between 2005 and 2011. *See, e.g.*, AR 252-295, 310-545, 558-60, 575-97. As such, the ALJ's finding is not supported by substantial evidence in the record, and the Court concludes that here, too, the ALJ erred in finding that plaintiff's delay in applying for disability benefits undermines plaintiff's subjective symptom testimony.

C.    Inconsistency with RFC

Next, plaintiff challenges the ALJ rejection of plaintiff's testimony of fatigue, "brain fog" with poor concentration and memory; and "nod[ding] off" when talking to people because the evidence did not reflect more restrictions than the RFC. AR 1039. Because plaintiff's subjective symptom testimony must be taken into account in assessing the RFC, it cannot then be discredited because it is inconsistent with that RFC. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

In stating that a claimant's testimony is being rejected as inconsistent with the RFC, the Ninth Circuit has held that an ALJ thereby "indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or

she] is required to do.'" *Laborin*, 867 F.3d at 1154 (citing *Trevizo*, 862 F.3d at 1000 n.6 and *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (holding that this boilerplate language conflicts with the regulations and rulings)). "This practice 'inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC.'" *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis in original).

Defendant argues that the ALJ's use of such boilerplate language—located four pages after her conclusion that plaintiff's testimony was not consistent with the medical evidence—is therefore not putting the "cart before the horse." Dkt. 9 at 8. However, regardless where the language appears in the ALJ's decision, the ALJ used the RFC as a basis for deciding that plaintiff's own testimony about her symptoms was not credible. This is not a legally valid reason to discount plaintiff's subjective symptom testimony.

D.     Objective Medical Evidence and Improvement with Treatment

The Court has determined the ALJ's other reasons for discounting plaintiff's subjective symptom testimony are improper. The only remaining reason the ALJ relied upon for discounting plaintiff's complaints is that the complaints are inconsistent with the objective evidence. AR 1036-1039.

Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885

F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

As discussed above, the other reasons the ALJ provided for discounting plaintiff's credibility are not legally sufficient. The ALJ thus cannot rely solely on inconsistency with the objective medical evidence to support her credibility determination.

Moreover, the Court notes that the Ninth Circuit's opinion in *Revels* illustrates that fibromyalgia symptoms cannot be discredited due to a lack of or inconsistency with objective medical evidence because fibromyalgia is defined by a plaintiff subjective complaints, and there is a lack of underlying causes for an accurate diagnosis. *See Revels*, 874 F.3d at 648, 667-668.

F.    Harmless Error

Plaintiff testified to greater limitations than the limitations included in the RFC determination. Plaintiff testified that she has pain all over her body, from head to toe, needs to lie down or rest 95 percent of the time, has trouble walking, cannot sit or stand for long periods of time, is always tired and fatigued, and has "brain fog." AR 51, 55-56, 58, 1073, 1081. Plaintiff testified she only has "good" days anywhere from two to six times per month. AR 57. Plaintiff testified that medication helps, but she continues to have severe symptoms. AR 51. The ALJ determined that plaintiff has the RFC to perform light work, which involves lifting no more than 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds and "sitting most of the time." AR 1034; 20 C.F.R. § 404.1567(b). If the ALJ had properly considered plaintiff's subjective symptom testimony, more severe limitations would be included in the RFC. The ALJ's error with respect to plaintiff's credibility is not harmless and requires reversal. *Stout*, 454 F.3d at 1055 (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination).

III.  The ALJ's Evaluation of the Lay Witness Evidence

The ALJ rejected lay witness statements finding that they reflected the same allegations made by plaintiff, were not consistent with the overall record as was plaintiff's testimony, and were submitted in October 2012, which is more than seven years after the alleged onset date and five years after the date last insured. AR 1044-45.

Plaintiff argues the ALJ erred in rejecting the lay witness testimony of plaintiff's mother, LaVeta R.; plaintiff's stepson, Sean C.; plaintiff's husband, Steve C.; plaintiff's cousins, Sheree S. and Lisa H.; plaintiff's brother-in-law, Tom C.; plaintiff's sister, Emily C.; plaintiff's cousins', Ted and Darlene R.; and plaintiff's caregiver, Danielle Kelley. Dkt. 8 at 13-16.

The Commissioner is bound by this Court's previous decision concerning these issues. *Stacy*, 825 F.3d at 567.

To the extent the ALJ provided additional reasoning, the Court finds the ALJ failed to provide a germane reason supported by substantial evidence for rejecting the lay witness testimony. Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis,* 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Ms. LaVeta R. testified that after a car accident in 1999, plaintiff could no longer participate in activities at family functions, and if she tried, plaintiff was in bed for a few days. AR 215. During a family trip in 2005, plaintiff spent 90 percent of the week in bed. AR 215. In 2006, plaintiff briefly lived with Ms. LaVeta R., and plaintiff found simple chores around the

house difficult and tiring. AR 215. During a family trip in 2007, even after resting for a day or so after the flight, plaintiff was unable to participate in activities, she was only able to be with the family on a limited basis, was in a lot of pain, and required rest. AR 215. Ms. LaVeta R. testified that she often helps plaintiff with cleaning and everyday tasks. AR 215.

Plaintiff's husband testified in great detail regarding plaintiff's pain, headaches, fatigue, and physical and cognitive functioning. AR 1240. He described the period in 2004 and 2005 when he and plaintiff were working as a property manager wherein plaintiff mostly stayed in bed, only coming to the office "now and then" to answer phones or do paperwork. AR 1241. Plaintiff's husband testified that in 2006 plaintiff suffered from increased cognitive impairments, "more and more time in bed staring at the TV with no social life," no physical activities, and no improvement. AR 1241. Plaintiff's husband testified that plaintiff was able to bathe herself, but sometimes she cannot not make it to the bed afterwards. AR 1241. He testified that during family vacations the travel would "put her under for the first few days and after that she could only participate a few hours each day." AR 1241. He testified that standing is a "real problem for any length of time at all[,]" and that lifting, even grocery or shopping bags, would be difficult and result in exacerbating pain that would keep plaintiff up at night and then keep her asleep most of the next day. AR 1241. He testified that she can "barely take care of herself[,]" since 2005, and that he handles everything from money to household tasks to ensuring that plaintiff is keeping with her treatments and medications. AR 1241.

Plaintiff's stepson testified that between 2005 and 2007, plaintiff slept a lot and had her bedroom set up like a small apartment so that she did not have to leave it very often. AR 1236. He testified that his father did most of the housework, and that while plaintiff and his father were working as a property manager, plaintiff slept most of the time and was "out of it." AR 1236-37.

He testified that the few times he went with plaintiff to a park, she would "have to have a wheelchair if it was going to be a long time." AR 1236. He also testified that plaintiff cannot lift things or take out the garbage. AR 1236.

In a statement from 2012, Ms. Sheree S. testified that over the last several years, plaintiff required assistance with basic tasks, moved and spoke slowly, and seemed emotionally drained. AR 214. Ms. Lisa H. testified that plaintiff had a difficult time completing basic daily tasks during a visit in 2005, and since that time, plaintiff needed assistance most days. AR 212. Mr. Tom C. testified that plaintiff's health had deteriorated during the 15 years that he had known her, and that on two occasions in 2006 plaintiff was in a wheelchair and unable to spend much time with others. AR 209-210. Mr. Tom C. and Mrs. Emily C. also described plaintiff's limitations during a 2006 family trip, testifying that plaintiff moved slowly, needed assistance, used a cart or wheelchair, was unable to play with her nieces and nephews, and it took her longer to respond in a conversation. AR 208-209.

In a statement from 2012, Mr. Ted R. and Mrs. Darlene R. stated that plaintiff struggled to walk, and had little to no movement in her upper body. AR 206. Ms. Kelley testified that since March 2012, she has worked as plaintiff's part-time caregiver. AR 205. Ms. Kelley testified that she performs household chores and basic care for plaintiff. AR 205. Ms. Kelley testified that plaintiff is not able to care for herself and is upstairs in her bedroom all day. AR 205.

To the extent that the ALJ rejected the lay witness statements because they reflected the same allegations made by plaintiff and were inconsistent with the overall record, the Court has determined that the ALJ erred in evaluating plaintiff's credibility. Therefore, the ALJ may not reject the lay witness testimony for the same reasons. *Cf. Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave a germane reason for rejecting

claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected).

   To the extent that the ALJ rejected the lay witness testimony because it was not probative of the relevant time period of February 1, 2005 and December 31, 2007, the period between the alleged onset date and the date last insured, this was error. Contrary to the ALJ's finding, the lay witness statements did reflect testimony regarding plaintiff's level of functioning during the period at issue. For example, Ms. LaVeta R., plaintiff's husband, plaintiff's stepson, Ms. Sheree S., Ms. Lisa H., Mr. Tom C., and Mrs. Emily C., all testified as to plaintiff's level of functioning between 2005 and 2007. AR 206, 208, 210, 212, 214-215, 1236-1241. This testimony reflects that between 2005 and 2007, plaintiff was unable to complete most household tasks, could not walk long distances, could not stand for long periods of time, and suffered constant fatigue and pain. *See id.* Thus, the lay witness testimony of Ms. LaVeta R., plaintiff's husband, plaintiff's stepson, Ms. Sheree S., Ms. Lisa H., Mr. Tom C., and Mrs. Emily C. was probative of plaintiff's impairments and limitations, and the ALJ erred in rejected this testimony. *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (to obtain DIB under Title II, a claimant must establish disability prior to the date last insured).

   With respect to Ms. Kelley, her statement only pertains to 2012, *see* AR 205, and is therefore not probative of whether plaintiff establish disability prior to December 31, 2007. *See Armstrong,* 160 F.3d at 589. Similarly, the 2012 statement from Mr. Ted R. and Mrs. Darlene R. does not clearly state when they saw plaintiff, and what time period their statement pertains to. AR 205. Therefore, this is also not probative of plaintiff's impairments and limitations during the relevant period. The Court thus concludes that the ALJ did not err in rejecting the testimony of

Ms. Kelley, Mr. Ted R., or Mrs. Darlene R.

IV.    Step Three Finding

Plaintiff argues the ALJ improperly considered whether plaintiff's migraines, combined with her other impairments, equaled Listing 11.02. Dkt. 8 at 16.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established in order for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

The burden of proof is on the claimant to establish he meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; *see also* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 *2 (a step three determination must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83–19, 1983 WL 31248 *2. The ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).

In considering step three, the ALJ noted that the prior District Court remand did not find any error at step three, and that plaintiff had not provided any additional evidence for the relevant period that the District Court did not approve. AR 1033. Therefore, the ALJ adopted and incorporated the step three finding from the prior decision that plaintiff's symptoms neither met nor equaled any listing. AR 1033. In the prior decision, the ALJ found that "[t]here was no listing for . . . chronic headaches, and that the record did not show medical findings that are the same or equivalent to those of any listed impairment (*See* 20 C.F.R. 404.1526). I have also considered the impairments in combination with the claimant's other impairments but conclude the impairments do not medically equal any listed impairment." AR 14. The ALJ is entitled to incorporate by reference portions of a prior decision not found to be erroneous. *See Jones v. Berryhill*, 2018 WL 1726405, at *4 (W.D. Wash. Apr. 10, 2018); *Walker v. Astrue,* 2010 WL 2305849, at *11 (C.D. Cal. June 4, 2010) (An ALJ may incorporate a previous decision and supplement it with a subsequent decision.); *Mason v. Astrue,* 2008 WL 4382662, at *2 (C.D. Cal. Sept. 11, 2008) (("Contrary to Plaintiff's assertion, there is nothing *per se* improper about incorporating prior administrative decisions by reference).

In her second decision, dated August 2017, however, the ALJ also expanded on her prior finding, stating that the step three finding includes Listing 11.03 (non-convulsive epilepsy), which plaintiff's attorney described in her post-January 2016 hearing brief. AR 1033 (citing AR 1249-69). The ALJ found that "the evidence did not meet or equal [L]isting 11.03[3] because it does not contain a diagnosis of seizure disorder, must less a history of seizures 'documented by the detailed description of a typical seizure pattern, including all associated phenomena . . . .' The medical

---

[3] [Footnote in original] New neurological listing when into effect on January 17, 2017 and listing 11.03 was rendered obsolete. Listing 11.03 can be viewed within historical listings at https://secure.ssa.gov/poms.nsf/lnx/0434131000.

evidence, as discussed below, also does not indicate that the claimant's headaches were severe enough to equal the listing." AR 1033. Under these circumstances, courts have declined to apply the law of the case doctrine. *See Holmes v. Colvin*, 2016 WL 6943775, at *2 (W.D. Wash. Nov. 28, 2016) (declining to apply the law of the case doctrine where "the particular rationale" the ALJ used to discount opinions "could not have been affirmed by this Court previously, as they were not part of the previous written decision"); *Haydo v. Colvin*, 2014 WL 2478120, at *3 (W.D. Wash. June 3, 2014) (law of the case doctrine did not apply in part because the ALJ "treat[ed] this evidence differently" in the current ALJ decision than in the previous ALJ decision); *see also Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016).

Plaintiff argues that although the ALJ acknowledged that Listing 11.03 was rendered obsolete on January 17, 2017, the ALJ failed to discuss the listing that replaced Listing 11.03, Listing 11.02, and did not perform any analysis to explain her step three evaluation. Dkt. 18 at 16-17.

The applicable listing is the text as it was in effect at the time of the ALJ's decision. *See* 81 FR 43048-01, 4306 n.6 (2016)). Listing 11.03, now obsolete, provided:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

https://secure.ssa.gov/poms.nsf/lnx/0434131013.

Listing 11.02, which was in effect at the time of the ALJ's August 2017 decision, is a single, consolidated epilepsy listing, which effectively incorporates Listing 11.03 at section B. Listing 11.02 now provides:

11.02 _Epilepsy,_ documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

OR

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

OR

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)).

OR

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt P, app. 1, 11.02.

Thus, because the current consolidated Listing 11.02 incorporated Listing 11.03, the fact that the ALJ referred to Listing 11.03 in her decision does not substantially affect the ALJ's analysis.

The Court now considers whether the ALJ properly evaluated plaintiff's migraines in the context of Listing 11.02. The Social Security Administration states a claimant's impairment of chronic migraines medically equals Listing 11.03, now Listing 11.02(B), when:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her [activities of daily living (ADLs)]. The claimant takes medication as her doctor prescribes.

POMS DI 24505.015(B)(7)(b); *see also Salazar v. Colvin,* 2016 WL 6892394, at *2 (W.D. Wash. Nov. 23, 2016). The POMS, or Program Office Manual System, "does not have the force of law," but is deemed to be "persuasive authority" in the Ninth Circuit. *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

Here, the ALJ found that plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, chronic headaches, depression, and substance dependence. AR 1033. With regard to step three, throughout his decision the ALJ discussed and summarized the objective medical evidence as it was relevant to Listing 11.02(B). *See* AR 1036-38. For example, the ALJ noted that in August 2004, plaintiff reported that she has suffered from migraine headaches, since age 12, without aura, with nausea which cause sensitivity to light, movement, and sound. AR 1037; *see also* AR 963. Plaintiff reported that her migraines occur less often since starting Depo-Provera 10 years ago, and are triggered by stress, cheese, red wine, chocolate, bright lights, and associates with blurred vision and spots with headaches. AR 1037; *see also* AR 963. In August 2004, plaintiff reported that her migraines last between two to 72 hours, more than 15 days per month. AR 1037; *see* AR 963.

However, in October 2004, plaintiff reported to Dr. Sajben that her migraines were "a lot better." 1037, AR 591 In December 2004, plaintiff reported her migraines were "markedly better," 1037, AR 587. The ALJ also noted that in March and April 2005, plaintiff reported to Dr. Sajben that her migraine headaches were well-controlled. AR 1038 (citing AR 579) (Dr. Sajben's treatment notes from April 13, 2005 reflect that plaintiff's migraines were again, "markedly better."). While the record does not necessarily reflect what "better" constitutes, there is no evidence to suggest that plaintiff's migraines were interfering with her activities of daily living or that her migraines continued to occur 2 times or more weekly. *Compare* AR 962 *with* AR 579, 587, 591.

Thus, contrary to plaintiff's argument, the ALJ adequately "discussed and evaluated evidence supporting [her] conclusion" that plaintiff's impairments did not meet Listing 11.02 based on an improvement in her symptoms after August 2004. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (to satisfy step three, an ALJ must "discuss and evaluate the evidence that supports [his] conclusion," though he need not do so under any particular heading). As such, the ALJ did not err at step three.

V.      Remand for Award of Benefits

Plaintiff argues that this case should be remanded for an award of benefits, Dkt. 8 at 18-19. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir.

2017) (amended January 25, 2018) (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only

> where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020).

The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, 880 F.3d at 1045. Then, having answered that question in the affirmative, the Court considered the second step in the analysis: Are there no remaining issues that must resolved before a disability determination can be made, and further administrative proceedings would not be useful? *Id.* The Court confirmed that the third step would result in an award of benefits only if the questions at parts one and two of the analysis are answered yes—and crediting the improperly discredited evidence as true, further proceedings would appear to be unnecessary. *Id.*

The Court in *Leon* held that even where the district court finds in the first part of the analysis that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the second part of the analysis that there is "a fully developed record without any conflicts, gaps, or ambiguities," and finally reaches the third part of the analysis and credits the rejected evidence as true, it is still within the court's discretion whether to remand for further proceedings or for award of benefits. *Leon,* 880 F.3d at 1045. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether the claimant is disabled, the

district court retains discretion to remand to the agency for additional proceedings. *Id.*; *Revels*, 874 F.3d at 668.

In the instant case, there are no outstanding issues that must be resolved before a proper disability determination can be made. The ALJ failed to provide legally sufficient reasons for discounting plaintiff's subjective symptom testimony, the lay witness testimony of Ms. LaVeta R., plaintiff's husband, plaintiff's stepson, Ms. Sheree S., Ms. Lisa H., Mr. Tom C., and Mrs. Emily C., and the opinion evidence of Dr. Neiman. Crediting the evidence that was rejected by the ALJ as true, additional hearings would be unnecessary. No issues remain; considering the record as a whole, the Court does not have serious doubt as to whether plaintiff is disabled and thus, further administrative proceedings would be unwarranted.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for award of benefits.

Dated this 13th day of November, 2018.


Theresa L. Fricke
United States Magistrate Judge